# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. 2:25-cv-2217-JPM-cgc |
| v. | )<br>)<br>) |
| SUNRISE VILLAS, LLC,<br>MATTY WERCBERGER, &<br>SHIMON WEINBERGER | )<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER GRANTING TEMPORARY RESTRAINING ORDER AND SETTING HEARING FOR PRELIMINARY INJUNCTIVE RELIEF

Before the Court is an Emergency Motion for Temporary Retraining Order and Preliminary Injunctive Relief, filed by Plaintiff Federal National Mortgage Association ("Plaintiff" or "Fannie Mae") on March 7, 2025. (ECF No. 13.) As relief, Plaintiff requests the Court restrain Defendants Sunrise Villas, LLC ("Sunrise" or "Borrower"), Matty Wercberger ("Wercberger"), and Shimon Weinberger ("Weinberger") (collectively, "Defendants") from denying Plaintiff and its agents access to the Mortgaged Property to conduct a property condition assessment ("PCA") inspection. For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

I.     **BACKGROUND**[1]

On February 26, 2025, Plaintiff filed its lawsuit against Defendants.  (ECF No. 1.) Plaintiff asserts separate causes of action for breach of contract against Borrower and Wercberger & Weinberger (collectively, "Guarantors").  (Id. ¶¶ 67–78.)

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  (Id. ¶ 6.)

A.     **The Parties and Execution of the Loan Documents**

Borrower is a Tennessee limited liability company with Guarantors as its two members. (Id. ¶ 8.)  Borrower owns and operates the Sunrise Terrace Apartments complex, located at 2080 Winchester Road, Memphis, Tennessee 38116 (the "Property").  (Id. ¶ 3.)

On October 26, 2022, Borrower obtained a loan from Arbor Commercial Funding I, LLC ("Original Lender" or "Servicer") pursuant to a Multifamily Note ("Note") in the original principal sum of $7,274,00 (the "Loan").  (Id. ¶ 13.)  In connection with this transaction, Borrower executed a "Multifamily Loan and Security Agreement (Non-Recourse)" (the "Loan Agreement").  (Id. ¶ 14.)  As security, Borrower granted Original Lender a "first priority security interest in, among other things and without limitation, the real property, all buildings, structures, improvements, and alterations constructed or at any time in the future constructed or placed upon the Property, together with all rents, revenues, and income thereof as well as all personal property including equipment, inventory, and general intangibles used in connection with the ownership, management, or operation of the Property" (the "Mortgaged Property"). (Id. ¶ 15.)  A Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing from Borrower for the benefit of Original Lender was recorded in the Shelby County Register's Office as Instrument No. 22119290 (the "Security Instrument").  (Id.)

---

[1] As Defendants have not yet appeared, no portion of this Section is considered a final finding of fact.

The same day, Guarantors executed a Guaranty of Non-Recourse Obligations (the "Guaranty"), where they "absolutely, unconditionally, and irrevocably guarantee[d] to [Fannie Mae] the full and prompt payment and performance when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of all amounts, obligations and liabilities owed to [Fannie Mae] under Article 3 (Personal Liability) of the Loan Agreement."  (Id. ¶ 16 (citing ECF No. 1-5 ¶ 3).)  Original Lender then assigned the Note, Security Instrument, and all other documents referring to, relating to, or evidencing the Loan ("Loan Documents") to Plaintiff pursuant to an Assignment of Collateral Agreements and other Loan Documents ("Note Assignment") an Assignment of Security Instrument ("Mortgage Assignment").  (Id. ¶ 17.)  The Note Assignment and Mortgage Assignment were recorded as Instrument No. 22119291.  (Id.)

As a result of the Note Assignment and Mortgage Assignment, Plaintiff is the holder and owner of the Loan Documents and thus entitled to enforce them.  (Id.)

**B.     Inspection and Default**

In May 2024, Original Lender notified Borrower that Original Lender would conduct an inspection of the interior of at least six units and the exterior and common areas of the Mortgaged Property on June 25, 2024.  (Id. ¶ 28.)  At that time, Original Lender requested Borrower complete a Management Assessment Questionnaire and provide current rent rolls prior to the June 25 inspection.  (Id.)  Borrower completed the Management Assessment Questionnaire and provided its July 2024 rent roll.  (Id.)

Original Lender and Plaintiff conducted the inspection on June 25, 2024.  (Id. ¶ 29.)  They found "substantial issues in the physical condition of the Mortgaged Property" which "require[d] immediate attention," and "substantial deferred maintenance affecting several areas

3

of the Property." (Id. ¶ 30.) These issues included "Life Safety issues," which are "dangerous conditions that could directly threaten the safety of a buildings' occupants." (Id. ¶ 30 n.1.)

Plaintiff and Original Lender also found "misrepresentations in the Management Assessment Questionnaire and [the] July 2024 rent roll." (Id. ¶ 31.) While Borrower represented to Plaintiff and Original Lender there were "no down units," they found at the inspection that "at least one unit was observed to be demolished down to the studs, and several other units appeared to need extensive renovations to restore the units to rent[-]ready condition." (Id.) Plaintiff and Original Lender also found tarp coverings on two of the buildings, "indicating water intrusion issues, but no roof leaks were reported on the Management Assessment Questionnaire." (Id.)

Because of the June 2024 inspection, Plaintiff requested a PCA inspection be conducted on the Mortgaged Property in July 2024. (Id. ¶ 32.) However, the July 2024 PCA inspection did not occur. (Id. ¶ 33.) On October 17, 2024, Plaintiff sent Defendants a Notice of Demand stating Borrower's failure to allow a PCA inspection constitutes default under Sections 6.02 and 14.01 of the Loan Agreement. (See ECF No. 13-1 at PageID 323.) While Borrower appeared to agree to a PCA inspection to take place on November 13 and 14, 2024, once again no such inspection occurred. (Id. at PageID 323–24.) Rather, on November 13, 2024, Borrower's counsel canceled the PCA inspection, citing "the need for a 'clear understanding of the inspection, scope and time to make necessary tenant arrangements.'" (ECF No. 1 ¶ 38 (citing ECF No. 1-12).) On November 20, 2024, Plaintiff sent Defendants a Final Notice demanding Borrower allow Plaintiff to complete the PCA inspection in December 2024. (Id. at PageID 324.) Borrower failed to comply. (Id.) To date, Plaintiff has not been able to conduct a PCA inspection on the Mortgaged Property. (Id.)

4

C.     **Procedural Background**

Plaintiff filed its Complaint on February 26, 2025.  (ECF No. 1.)  Defendants have yet to appear in the case.  (See ECF No. 11.)  Plaintiff sought a temporary restraining order ("TRO") and preliminary injunction with its Complaint, (ECF No. 1 ¶ 45), but filed the instant Motion on March 7, 2025.  (See ECF No. 13.)

II.    **LEGAL STANDARD**

Courts examine four factors in deciding whether a TRO or preliminary injunction is appropriate: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent [injunctive relief], (3) whether granting the [injunctive relief] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [injunctive relief]."  Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008) (quoting Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006)).  "All four factors are not prerequisites but are interconnected considerations that must be balanced together."  Coal. to Defend Affirmative Action v. Granholm, 473 F.3d 237, 244 (6th Cir. 2006).

"The [C]ourt may issue a preliminary injunction only on notice to the adverse party."  Fed. R. Civ. P. 65(a)(1).  However, the Court may issue a TRO without written or oral notice to the adverse party or its attorney, but only upon two necessary conditions: (1) if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1).

5

If the Court issues a TRO without notice to the adverse party, it must "state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered on the record." Fed. R. Civ. P. 65(b)(2). Unless extended for good cause, a TRO issued without notice must expire no later than fourteen (14) days after its issuance. Id.

### III. ANALYSIS

Plaintiff moves the Court for a TRO and a preliminary injunction. (See ECF No. 13-1 at PageID 331.) Specifically, Plaintiff requests the Court issue a TRO "prohibiting Borrower and its agents from preventing Fannie Mae and its agents access to the Mortgaged Property to conduct a PCA inspection." (ECF No. 13 at PageID 317.)

The Court considers Plaintiff's arguments in context of the four factors laid out above. See supra Section II (citing Brunner, 543 F.3d 357, 361). After analyzing the four factors, the Court considers Plaintiff's request for bond waiver. (See ECF No. 13-1 at PageID 331.)

#### A. Granting Injunctive Relief

*i.    Factor One—Strong Likelihood of Success on the Merits*

The Court first examines if Plaintiff has demonstrated "a strong likelihood of success on the merits." See Brunner, 543 F.3d 357, 361. This does not require Plaintiff to prove their case in full, but rather to "show more than a mere possibility of success." Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 402 (6th Cir. 1997). "[I]t is ordinarily sufficient if [Plaintiff has] raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Id. (citing In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985)).

Plaintiff argues it has a strong likelihood of success in its breach of contract claims

6

against both Borrower and Guarantors. (See ECF No. 13-1 at PageID 326.) Regarding Borrower, Plaintiff argues Borrower is in default under the terms of the Loan Documents because Borrower failed to allow Plaintiff to conduct the PCA inspection of the Mortgaged Property. (Id. (citing ECF No. 1 ¶¶ 41–44).) Regarding Guarantors, Plaintiff argues Guarantors are similarly in default, as they failed to satisfy their obligations under the Loan Agreement. (Id. (citing ECF No. 1 ¶ 77).)

a. Borrower

The Court finds Plaintiff has a strong likelihood of success in its breach of contract claim against Borrower. First, there is no dispute the Loan Agreement is valid. Second, Loan Agreement Section 6.02(d) confers upon Borrower a duty to permit Plaintiff to "enter upon and inspect the Mortgaged Property" and to "cooperate and provide access to all areas of the Mortgaged Property." (See ECF No. 1-3 at PageID 61.) Third, because Plaintiff has not been able to conduct its PCA inspection, (see ECF No. 1 ¶¶ 41–44), Borrower is in default. (See ECF No. 1-3 § 14.01(c)(1) (defining an "Event of Default" as "any failure by Borrower to perform any of its obligations under this Loan Agreement . . . as and when required"). Because "[Borrower] is in default and has not complied with the requirements of [the Loan Agreement] in the event of default . . . the first factor weighs heavily in [Plaintiff's] favor [in granting injunctive relief]." See Fed. Nat. Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship, No. 10-cv-10381, 2010 WL 1753112, at *6 (E.D. Mich. Apr. 30, 2010).

b. Guarantors

The Court finds Plaintiff has a strong likelihood of success in its breach of contract claim against Guarantors. First, there is no dispute the Guaranty is valid. Second, under the Guaranty, Guarantors "absolutely, unconditionally, and irrevocably guarantee[d] to [Plaintiff] the full and

prompt payment and performance when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of all amounts, obligations and liabilities owed to [Plaintiff by Borrower] under Article 3 (Personal Liability) of the Loan Agreement." (ECF No. 1-5 ¶ 3.) Under the Loan Agreement Section 3.02(a)(4), Borrower is personally liable for repayment any debt incurred from "failure to comply with any provision of [the] Loan Agreement." (ECF No. 1-3 at PageID 42.) Guarantors thus guaranteed payment of Borrower's debt incurred from failure to provide access. See supra Section III.A.i.a. Third, because Guarantors have not paid any such amount, they have caused Plaintiff damages. (See ECF No. 1 ¶¶ 76–77.) Because Guarantors have not complied with their obligations under the Guaranty, the first factor weighs in favor of granting injunctive relief. See Mapletree Invs., 2010 WL 1753112, at *6; Textron Fin. Corp. v. Crabtree RV Ctr., Inc., No. CIV. 09-2044, 2009 WL 1098944, at *3 (W.D. Ark. Apr. 23, 2009).

    *ii. Factor Two—Irreparable Injury*

  The Court next looks to whether Plaintiff would suffer irreparable injury absent its requested injunctive relief. See Brunner, 543 F.3d at 361. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 550 (6th Cir. 2007) (internal citations and quotations omitted).

  Plaintiff argues it would be irreparably harmed by the potential loss of the Mortgaged Property, given Plaintiff can only recover the Mortgaged Property as payment for any debt. (See ECF No. 13-1 at PageID 327–28 (citing ECF No. 1-3 § 3.01).)

The Court finds this factor weighs in favor of granting the TRO, as Plaintiff would suffer irreparable injury absent injunctive relief. Plaintiff's primary recourse in collecting any debt from Borrower is the Mortgaged Property. (See ECF No. 1-3 § 3.01.) The Mortgaged Property thus functions as loan collateral. (See id.) Loss of loan collateral can be considered irreparable harm. See First Tenn. Bank Nat. Ass'n v. Pac. Am. Grp., Inc., No. 07-2664B, 2008 WL 269537, at *3 (W.D. Tenn. Jan. 29, 2008). Indeed, "[Plaintiff] would suffer irreparable harm if [Defendants are] allowed to continue to improperly collect, dispose of, and misappropriate the proceeds from [its] collateral." See id. Thus, the second factor weighs in favor of granting injunctive relief. See id.

      *iii.    Factor Three—Substantial Harm To Others*

Here, the Court examines whether granting the requested injunctive relief would cause substantial harm to others beyond the Parties. See Brunner, 543 F.3d at 361. Plaintiff maintains the only third parties affected would be the tenants who reside at the Property. (See ECF No. 13-1 at PageID 329.) Plaintiff argues the issuance of a TRO to allow Plaintiff to conduct a PCA inspection would serve the interests of these tenants, as the inspection would identify hazardous conditions on the Property. (Id.) The Court therefore does not find a substantial harm to any third parties in issuing a TRO. This factor thus weighs in favor of granting injunctive relief. See Tenke, 511 F.3d at 551.

      *iv.    Factor Four—Public Interest*

Here, the Court examines "whether the public interest would be served by granting the stay." See Brunner, 543 F.3d at 361. Plaintiff argues enforcement of the Loan Agreement and Guaranty—which are valid contracts—is within the public interest. (See ECF No. 13-1 at PageID 329 (citing Tenke, 511 F.3d at 551).) The Court finds Plaintiff's argument persuasive.

9

There is currently no dispute that the Loan Agreement or Guaranty are valid. Furthermore, Plaintiff has demonstrated a strong likelihood of success on the merits of its breach of contract claims. See supra Section III.A. Because "[e]nforcement of contractual duties is in the public interest[,] . . . [the Court] finds that this final factor also points toward the issuance of the [injunctive relief]." See Tenke, 511 F.3d at 551.

      *v.*    *Conclusion*

Because each of the four factors weigh in favor of granting injunctive relief, see supra Section III.A, Plaintiff's request for a TRO is **GRANTED**. See Tenke, 511 F.3d at 551, 554. The Court, however, will not grant a preliminary injunction at this time. While the Court may grant a preliminary injunction without a hearing, see Fed. R. Civ. P. 65 (requiring only notice to the adverse party to issue a preliminary injunction), the Court follows the guidance of the Sixth Circuit which "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." See Cnty. Sec. Agency v. Ohio Dep't of Com., 296 F.3d 477, 484 (6th Cir. 2002) (citation omitted). The Court thus **SETS A HEARING** on the issue of preliminary injunctive relief for **March 17, 2025** at **2:30 PM CDT**. Plaintiff is required to give Defendants notice of the hearing.

**B. Waiver of Bond**

Generally, the Court may only issue a TRO if Plaintiff "gives security in an amount that the [C]ourt considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." See Fed. R. Civ. P. 65(c). This bond, however, while not mandatory, must be expressly considered by the Court. See Roth v. Bank of the Commonwealth, 583 F.2d 527, 539 (6th Cir. 1978). After proper consideration, the Court may determine that no security is required, as "the matter of requiring security in each case rests in

10

the discretion of the District Judge." Urbain v. Knapp Bros. Mfg. Co., 217 F.2d 810, 815–16 (6th Cir. 1954); see also Galper v. U.S. Shoe Corp., 815 F. Supp. 1037, 1045 (E.D. Mich. 1993).

Plaintiff argues the Court should waive the bond because Defendant would suffer no harm as a result of the TRO. (See ECF No. 13-1 at PageID 330.) Rather, the TRO would simply bring Defendants into compliance with the documents they previously signed. (See id.)

The Court finds Plaintiff's argument persuasive but nonetheless imposes a nominal bond of $5,000. The Court's TRO would bring Defendants into compliance with the contracts to which they already agreed. (See supra Section III.A.) Thus, there is a low likelihood of harm to Defendants, which justifies only a nominal bond. See Skyros, Inc. v. Mud Pie, LLC, No. 2:16-cv-02255-STA-tmp, 2016 WL 3165625, at *7 (W.D. Tenn. June 3, 2016) (imposing a nominal bond where there was no proof of likelihood of harm to the defendant).

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order is **GRANTED**. The Court, having been advised of the premises and Plaintiff having established grounds for the issuance of a temporary restraining order, hereby **ORDERS**:

1. Fannie Mae's Verified Complaint, Motion, and the entire record in this cause establish sufficient grounds for issuance of temporary restraining order as prayed for in the Verified Complaint and pertaining to the real and personal property (collectively, "Mortgaged Property") located at 2080 Winchester Road, Memphis, Tennessee 38116 ("Property").

2. In connection with a loan in the original principal amount of $7,274,000.00, Borrower executed, among other documents, a Multifamily Note ("Note"), Multifamily Loan and Security Agreement (Non-Recourse) ("Loan Agreement"), and Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Security Instrument"

11

collectively "Loan Documents").  Fannie Mae is the mortgagee, and owner and holder of the Loan Documents.

3. Borrower and its agents are hereby restrained from denying Fannie Mae and its agents access to the Mortgaged Property to conduct a PCA inspection, including without limitation, access to all units.

4. The Court will hold a hearing on Fannie Mae's request for preliminary injunctive relief on **March 17, 2025**, at **2:30 PM CDT**.

5. Plaintiff is to provide notice of the preliminary injunction hearing to Defendants by serving on them a copy of this Order and the separate TRO document.  (See ECF No. 17.)

6. The Court retains jurisdiction for such other orders as shall be deemed just and necessary.  This Court will reserve judgment on all matters addressed in the Verified Complaint not expressly addressed by this Order and will address those issues at the trial of this matter or upon motion of either party.

**SO ORDERED**, this the 10th day of March, 2025 at 5:00 PM CDT.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE