IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. 2:25-cv-2217-JPM-cgc |
| v. | )<br>) |
| SUNRISE VILLAS, LLC,<br>MATTY WERCBERGER, &<br>SHIMON WEINBERGER | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**ORDER STAYING APPOINTMENT OF RECEIVER AND SETTING HEARING**

Before the Court is Defendants' Emergency Motion to Stay Appointment of Receiver and to Reconsider Order of Appointment. (ECF No. 34.) The Court held a Hearing on Defendants' Motion ("Motion Hearing") on June 26, 2025. (See ECF No. 39 (Minute Entry).) For the reasons discussed below, the Court **STAYS** appointment of a receiver and **SETS A HEARING** for **July 9, 2025**, at **10:30 AM CDT**.

**I.    BACKGROUND**[1]

On February 26, 2025, Plaintiff filed its lawsuit against Defendants Sunrise Villas, LLC ("Sunrise" or "Borrower"), Matty Wercberger ("Wercberger"), and Shimon Weinberger ("Weinberger") (collectively, "Defendants"). (ECF No. 1.) On May 29, 2025, Plaintiff filed an Amended Complaint—the operative complaint in the case. (ECF No. 31.) Plaintiff asserts

---

[1] Because Defendants disputed the substance of the PCA inspection and have yet to respond to the Complaint, no part of this Section is to be a finding of fact.

separate causes of action for breach of contract against Borrower and Wercberger & Weinberger (collectively, "Guarantors"). (Id. ¶¶ 97–108.)

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Id. ¶ 6.)

### A.     Factual Background

#### i.     The Parties and Execution of the Loan Documents

Borrower is a Tennessee limited liability company with Guarantors as its two members. (Id. ¶ 8.) Borrower owns and operates the Sunrise Terrace Apartments complex, located at 2080 Winchester Road, Memphis, Tennessee 38116 (the "Property"). (Id. ¶ 3.)

On October 26, 2022, Borrower obtained a loan from Arbor Commercial Funding I, LLC ("Original Lender" or "Servicer") pursuant to a Multifamily Note ("Note") in the original principal sum of $7,274,000 (the "Loan"). (Id. ¶ 13.) In connection with this transaction, Borrower executed a "Multifamily Loan and Security Agreement (Non-Recourse)" (the "Loan Agreement"). (Id. ¶ 14.) As security, Borrower granted Original Lender a "first priority security interest in, among other things and without limitation, the real property, all buildings, structures, improvements, and alterations constructed or at any time in the future constructed or placed upon the Property, together with all rents, revenues, and income thereof as well as all personal property including equipment, inventory, and general intangibles used in connection with the ownership, management, or operation of the Property" (the "Mortgaged Property"). (Id. ¶ 15.) A Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing from Borrower for the benefit of Original Lender was recorded in the Shelby County Register's Office as Instrument No. 22119290 (the "Security Instrument"). (Id.)

The same day, Guarantors executed a Guaranty of Non-Recourse Obligations (the "Guaranty"), where they "absolutely, unconditionally, and irrevocably guarantee[d] to [Plaintiff] the full and prompt payment and performance when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of all amounts, obligations and liabilities owed to [Plaintiff] under Article 3 (Personal Liability) of the Loan Agreement."  (Id. ¶ 16 (citing ECF No. 31-4 ¶ 3).)  Original Lender then assigned the Note, Security Instrument, and all other documents referring to, relating to, or evidencing the Loan ("Loan Documents") to Plaintiff pursuant to an Assignment of Collateral Agreements and other Loan Documents ("Note Assignment") an Assignment of Security Instrument ("Mortgage Assignment").  (Id. ¶ 17.)  The Note Assignment and Mortgage Assignment were recorded as Instrument No. 22119291.  (Id.)  As a result of the Note Assignment and Mortgage Assignment, Plaintiff is the holder and owner of the Loan Documents and thus entitled to enforce them.  (Id.)

    ii.  *Plaintiff's Attempts to Inspect the Property*

In May 2024, Original Lender notified Borrower that Original Lender would conduct an inspection of the interior of at least six units and the exterior and common areas of the Mortgaged Property on June 25, 2024.  (Id. ¶ 32.)  At that time, Original Lender requested Borrower complete a Management Assessment Questionnaire and provide current rent rolls prior to the June 25 inspection.  (Id.)  Borrower completed the Management Assessment Questionnaire and provided its July 2024 rent roll.  (Id.)

On June 25, 2024, Original Lender and Plaintiff conducted the inspection.  (Id. ¶ 33.)  They found "substantial issues in the physical condition of the Mortgaged Property" which "require[d] immediate attention," and "substantial deferred maintenance affecting several

3

areas of the Property." (Id. ¶ 34.) These issues included "Life Safety issues"—"dangerous conditions that could directly threaten the safety of a buildings' occupants." (Id. ¶ 34 n.1.)

Plaintiff and Original Lender also found "misrepresentations in the Management Assessment Questionnaire and [the] July 2024 rent roll." (Id. ¶ 35.) While Borrower represented to Plaintiff and Original Lender there were "no down units," they found at the inspection that "at least one unit was observed to be demolished down to the studs, and several other units appeared to need extensive renovations to restore the units to rent[-]ready condition." (Id.) Plaintiff and Original Lender also found tarp coverings on two of the buildings, "indicating water intrusion issues, but no roof leaks were reported on the Management Assessment Questionnaire." (Id.)

Because of the June 2024 inspection, Plaintiff requested a property condition assessment ("PCA") inspection be conducted on the Mortgaged Property in July 2024. (Id. ¶ 36.) However, the July 2024 PCA inspection did not occur. (Id. ¶ 37.) On October 17, 2024, Plaintiff sent Defendants a Notice of Demand stating Borrower's failure to allow a PCA inspection constitutes default under the Loan Agreement. (See ECF No. 32-1 at PageID 1066.) While Borrower appeared to agree to a PCA inspection to take place on November 13 and 14, 2024, once again no such inspection occurred. (Id.) Rather, on November 13, 2024, Borrower's counsel canceled the PCA inspection, citing "the need for a 'clear understanding of the inspection, scope and time to make necessary tenant arrangements.'" (ECF No. 1 ¶ 42 (citing ECF No. 31-11).) On November 20, 2024, Plaintiff sent Defendants a Final Notice demanding Borrower allow Plaintiff to complete the PCA inspection in December 2024. (ECF No. 32-1 at PageID 1067.) Borrower failed to comply. (Id.)

4

### iii. *Preliminary Injunction, PCA Inspection, and Default*

On March 7, 2025, Plaintiff filed an Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunctive Relief, seeking access to the Mortgaged Property to conduct a PCA inspection. (ECF Nos. 13, 14.) On March 13, 2025, Borrower's counsel provided a Rent Roll Analysis from March 1, 2025, which stated the Property had seven vacant and no down units. (ECF No. 31 ¶ 50; ECF No. 32-1 at PageID 1067.)

On March 17, 2025, the Court issued its Order Granting Preliminary Injunction as to Inspection. (ECF No. 24.) On March 27, 2025, Plaintiff conducted a PCA inspection on the Mortgaged Property. (ECF No. 31 ¶ 51.) The PCA identified "numerous deficiencies in the physical condition of the Mortgaged Property." (Id. ¶ 52.) This included Life Safety items which needed repair, three vacant units, and twenty-nine down units. (Id. ¶¶ 52, 53.)

On April 10, 2025, Plaintiff sent a Notice of Demand to Borrowers, stating Borrowers (1) were required to deposit $1,418,730.15[2] with Servicer as additional security for the Loan within ten days of the Notice of Demand; and (2) needed to correct the deficiencies found in the PCA inspection. (Id. ¶¶ 54, 55.) Borrowers failed to make the $1,418,730.15 deposit. (Id. ¶ 57.)

On April 29, 2025, Plaintiff sent a Notice of Default and Acceleration to counsel for Borrower and Guarantors ("Notice of Acceleration"). (Id. ¶ 59) Through the Notice of Acceleration, Plaintiff "notified Borrower of the Events of Default, accelerated the Indebtedness due and owing under the Loan Documents, terminated the right of Borrower to collect Rents, and demanded that Borrower hold any Rents received by Borrower after the occurrence of the Event of Default in trust for the benefit of [Plaintiff]." (Id. ¶ 60.)

---

[2] Plaintiff states this number arises because "$26,419.85 is currently being held by the Servicer in repair escrow and was credited to the $1,445,150.00 in Additional Lender Repairs and Additional Lender Replacements identified in the PCA." (ECF No. 32-1 at PageID 1068 n.3.)

To date, Borrower has failed to cure the Events of Default or satisfy its obligations under the Loan Documents. (Id.)

### iv.    Issuance of Receiver

On May 29, 2025, Plaintiff moved for issuance of (1) TRO; (2) preliminary injunction; and (3) appointment of a receiver over the Property. (ECF No. 32.) On June 20, 2025, the Court issued an Order Granting Receivership and Denying TRO & Preliminary Injunction. (ECF No. 33.)

### B.    Procedural Background

Defendants filed the instant Motion on June 23, 2025. (ECF No. 34.) The Court directed Plaintiff to respond by 12 PM CDT on June 26, 2025, and set the Motion Hearing for the same day at 3 PM CDT. (ECF No. 35.) Plaintiff filed its Response in a timely manner. (ECF No. 37.)

## II.    LEGAL STANDARDS

### A. Motion for Reconsideration[3]

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Id.

---

[3] Although Defendants initially brought their Motion pursuant to Rule 59(e), at the Motion Hearing Defendants stated Rule 54(b) is the appropriate mechanism.

**B. Receiver**

"Rule 66 of the Federal Rules of Civil Procedure authorizes the appointment of a receiver if a person with an interest in the property provides sufficient justification." PNC Bank, Nat. Ass'n v. Goyette Mech. Co., 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014) (citing Santibanez v. Wier McMahon & Co., 105 F.3d 234, 241 (5th Cir. 1997)).[4]

"A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." Liberte Cap. Grp., LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006).

The Court considers the following factors when determining whether to appoint a receiver:

> (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

PNC Bank, 15 F. Supp. 3d at 758. "Moreover, the [P]arties' advance consent to the appointment of a receive is a strong factor weighing in favor of appointing one." See id.

---

[4] The Court analyzes whether to appoint a receiver under the Federal Rules of Civil Procedure because "[a]lthough the Sixth Circuit itself has not addressed the issue, the weight of authority suggests that appointment of a receiver in a diversity action is controlled by federal law, not state law." Fed. Nat. Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship, No. 10-cv-10381, 2010 WL 1753112, at *2 (E.D. Mich. Apr. 30, 2010) (collecting cases).

## III.  ANALYSIS

### i.  *Procedure*

Plaintiff argues Defendants have waived any arguments against appointment of a receiver due to failure to respond to Plaintiff's motion. (ECF No. 37 at PageID 1125–26 (citing L.R. 7.2(a)(2).) At the Motion Hearing, counsel for Defendants conceded he made an erroneous assumption and did not respond.

Local Rule 7.2(a)(2), in relevant part, states "[f]ailure to respond timely to any motion . . . may be deemed good grounds for granting the motion." However, because appointing a receiver is an "extraordinary remedy that is only justified in extreme situations," the Court does not find it appropriate to foreclose Defendants' arguments on procedural grounds. See De Boer Structures (U.S.A.), Inc. v. Shaffer Tent & Awning Co., 187 F. Supp. 2d 910, 925 (S.D. Ohio 2001) (quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316 (8th Cir. 1993)). For the same reason, the Court finds it appropriate to reconsider its appointment of a receiver to "prevent manifest injustice." Rodriguez, 89 F. App'x at 959.[5]

### ii.  *Substance*

After hearing argument at the Motion Hearing and because appointing a receiver is an "extraordinary remedy that is only justified in extreme situations," the Court finds it prudent to hold an evidentiary hearing as to the nature of the Property and whether to appoint a receiver. See De Boer, 187 F. Supp. 2d at 925.

While Borrower did "expressly consent[] to the appointment of [a] receiver, including the appointment of a receiver ex parte," after an Event of Default, (ECF No. 31-3 at PageID 560), Defendants argue there has been no such event of default. Defendants maintain they

---

[5] The Court notes this sentence does not mean appointment of a receiver is inappropriate per se in context of the facts of case. Rather, it means the Court, considering the remedy sought, wishes to prevent the possibility of manifest injustice.

have addressed each of the life safety issues and most of the critical issues identified in the PCA inspection. (See ECF No. 34 at PageID 1106–09.) At the Motion Hearing, Defendants argued the PCA inspection was inaccurate as to the number of vacant and down units.

Due to these factual disputes, the Court does not find it appropriate to appoint a receiver at this time. See Resol. Tr. Corp. v. Fountain Circle Assocs. Ltd. P'ship, 799 F. Supp. 48, 51 (N.D. Ohio 1992) ("the form and quantum of evidence required [to appoint a receiver] is a matter of judicial discretion"). Borrower's consent, while normally a "strong factor weighing in . . . [P]laintiff's favor," does not weigh in favor of appointing a receiver because there is currently an asserted factual dispute as to whether an Event of Default occurred. See Mapletree, 2010 WL 1753112, at *3. Furthermore, there are disputes as to whether Borrower failed to maintain the Mortgaged Property, Borrower's financial position, imminent danger of diminution in value of the Property, and Plaintiff's probable success and possibility of irreparable injury. (See ECF No. 34 at PageID 1106–09 (outlining fixes to life safety and critical items on the property); id. at PageID 1096 ("Owners have invested more than $3.8 million since acquisition")); PNC Bank, 15 F. Supp. 3d at 758. Finally, at the Hearing, Defendants disputed Plaintiff's assertion that the rent rolls were misrepresented, stating the PCA inspection was inaccurate as to the number of vacant and down units. This is a dispute as to whether there was fraudulent conduct on Defendants' part.

Due to the factual disputes regarding any Event of Default and PNC Bank factors one, two, three, four, and seven, the Court stays appointment of M. Shapiro Real Estate Group as receiver for the Property. (See ECF No. 33 at PageID 1091.) Because it is unclear whether the facts support the appointment of a receiver, the Court sets an evidentiary hearing as detailed below. See United States v. Berk & Berk, 767 F. Supp. 593, 597 (D.N.J. 1991) ("No

9

hearing is necessary where the facts support the appointment of a receiver.") (citing <u>United States v. Mansion House Ctr. N. Redev. Co.</u>, 419 F. Supp. 85, 87 (E.D. Mo. 1976)).

## IV.    CONCLUSION

For the above reasons, appointment of a receiver for the Property is **STAYED**.  The Court **SETS A HEARING** for **July 9, 2025**, at **10:30 AM CDT**.  Any additional briefing the Parties wish to submit must be done so by **July 3, 2025**, at **12 PM CDT**.

**SO ORDERED**, this the 27th day of June, 2025.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE